UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

====

UNITED STATES OF AMERICA,

DECISION AND ORDER
v.                                                                01-CR-129A

AARON B. PIKE
GREGORY R. PATTISON
MATTHEW J. HARRISON
RICHARD C. ALICEA, SR.,

Defendants.

====

## <u>INTRODUCTION</u>

Currently before the Court is defendant Matthew Harrison's third motion for severance[1] pursuant to Fed. R. Crim. P. 14.  Harrison seeks severance on the ground that a separate trial from co-defendant Aaron Pike will permit him to offer exculpatory testimony by Pike.

----

[1]  Harrison made two earlier motions for severance.  The first motion was made on March 22, 2002, wherein Harrison moved generally for severance from "other defendants."  See Dkt. No. 148.  The second motion was made on December 18, 2005, wherein Harrison sought severance on the ground of prejudicial spillover and because a co-defendant (Aaron Pike) was proceeding *pro se.*  The third motion for severance was filed on January 9, 2006.

## DISCUSSION

Under Rule 14, when multiple defendants have been otherwise properly joined in one indictment, the Court may nonetheless grant a severance if it appears that joinder will prejudice the defendant or the government.  See Fed. R. Crim. P. 14(a).  As this Court has previously noted in denying Harrison's first and second motions to sever:

> [t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts . . . When defendants properly have been joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise specific trial rights of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence . . . When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

Zafiro v. United States, 506 U.S. 534, 537-40 (1993) (citations and internal quotations omitted).  It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.  Id. at 540.  Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.  Id.

When a defendant seeks severance because a co-defendant intends to offer exculpatory testimony on his behalf, the Court must consider the four factors set forth in United States v. Finkelstein, 526 F.2d 517 (2d Cir. 1975), cert. denied, 425 U.S. 960 (1976), specifically:  (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege against self-incrimination; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment.  Id. at 523-24.

With respect to the first factor, co-defendant Aaron Pike has provided an affidavit wherein he states, in sum and substance:

2.     Although I am not willing to be called as a witness by any co-defendant in a joint trial, I would agree to waive my Fifth Amendment privilege and testify at a separate trial of Matthew Harrison.

3.     At a separate trial of Mr. Harrison, I would testify that, to my knowledge, Mr. Harrison was not a participant in the drug distribution conspiracy alleged in count one of the pending second superseding indictment.

Pike's wholly conclusory statement that Harrison was not a "participant" of the alleged drug conspiracy is insufficient to meet the showing required in Finkelstein.  The affidavit is devoid of any facts upon which that

conclusory statement is made.  For example, Pike does not say that he would testify that he personally never provided any drugs to Harrison for distribution.

Additionally, Pike's offer of exculpatory testimony is implicitly conditioned on its presumption that Harrison be tried after Pike.  The third motion to sever was made on January 9, 2006, just days before the trial of Harrison and the remaining co-defendants was scheduled to commence.[2]  Aside from being untimely, the motion appears to be based upon the presumption that if a severance is granted, trial would proceed as scheduled against the remaining co-defendants, but Harrison would be rescheduled for trial at a later date.  Given that the Court and counsel for the remaining defendants have cleared their schedule for the next six weeks (the anticipated length of the trial), this presumption is likely accurate.  However, the Second Circuit has cautioned that an offer of exculpatory testimony that is conditioned on the moving defendant being tried last "smacks of bad faith."  See United States  v. Bari, 750 F.2d 1169, 1177 (2d Cir. 1984).  In light of Pike's not guilty plea, "it is unrealistic to think that [he] 'would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trail than he would be willing to insist upon his privilege as a defendant not to take the stand.'" Finkelstein, 526 F.2d at 524 (quoting Gorin v. United States, 313 F.2d 641, 646 (1st Cir.), cert. denied, 374 U.S. 829 (1963)).

---

[2]  Trial was scheduled to commence on January 6, 2006.  However, due to numerous pretrial motions and a family emergency for one of the lawyers, it was adjourned to January 17, 2006.

4

This is especially true because at this juncture Pike has chosen to proceed *pro se*.  Therefore, his affidavit agreeing to provide exculpatory testimony was provided without the benefit having been advised by legal counsel as to the consequences of his purported Fifth Amendment waiver, or the consequences of providing materially false testimony under oath.  Under these circumstances, the Court finds that Pike's wholly conclusory, untimely and unrealistic offer to provide exculpatory testimony weighs against granting the motion for severance.

The second Finkelstein factor requires the Court to consider whether the purported testimony would be cumulative.  The Court assumes for the purposes of this motion that Pike's purported exculpatory testimony (that Harrison was not a member of the charged conspiracy) would not be cumulative.  Nevertheless, the Court finds that third and fourth factors, like the first, weigh heavily against granting severance.

The third Finkelstein factor requires the Court to consider issues of judicial economy.  As stated, judicial economy favors that defendants who are properly joined be tried together, so as to avoid not only a waste of judicial resources, but also the inequity of inconsistent verdicts.  While judicial economy is a "serious consideration", this factor, by itself, "does not foreclose further inquiry."  See Finkelstein, 526 F.2d at 524.  Nevertheless, in this case, judicial economy weighs against granting the defendant's motion.

**5**

Finally, and perhaps most importantly, the Court must consider the likelihood that Pike's proffered exculpatory testimony would be subject to substantial, damaging impeachment.  See Finkelstein, 526 F.2d at 524.  The veracity of Pike's offer of exculpatory testimony is suspect not only for the reasons stated above, but also because it is apparently contrary to Harrison's own statements made during his proffer session with the government.  According to the government, Harrison admitted during his proffer session, and in the presence of counsel, that "he obtained quantities of methamphetamine from Aaron Pike which he, in turn, distributed to others."  See Government Response, Dkt. 575, at 2.  Even if Pike were to testify at trial, Pike's testimony would be subject to substantial, damaging impeachment from Harrison himself, because the government would be permitted to use Harrison's proffer statements to impeach Pike's testimony.  See United States v. Valez, 354 F.3d 190 (2d Cir. 2004) (holding that if a defendant presents evidence inconsistent with his proffer statements, the government is then permitted to present the defendant's own words in rebuttal); see also United States v. Krilich, 159 F.3d 1020, 1025 (7th Cir. 1998) (holding that, where a defendant attempted to introduce the testimony of another that was inconsistent with his own proffer, the government can use the defendant's proffer to contradict that testimony); United States v. Richardson, 130 F.3d 765, 778 (7th Cir. 1997), vacated on other grounds, 526 U.S. 813 (1999) (same); United States v. Dortch, 5 F.3d 1056, 1068 (7th Cir. 1993) (same).  Like

**6**

the defendants in <u>Valez</u>, <u>Krilich</u>, <u>Richardson</u> and <u>Dortch</u>, Harrison signed a proffer agreement wherein he agreed that any statements made by him could not be used during the government's case in chief, but could be used to impeach his testimony.  The fact that the testimony would be offered through Pike, not Harrison, is of no consequence because by offering Pike's testimony, Harrison would "in effect [do] the same thing."  <u>See e.g</u> <u>Richardson</u>, 130 F.3d at 778 (holding that it didn't matter whether the defendant personally testified contrary to his proffer because offering testimony by another to that effect is the same thing).

In sum, upon consideration of the <u>Finkelstein</u> factors and all the circumstances of this case, the Court finds that defendant Harrison's third motion for severance should be denied.

IT IS SO ORDERED.

/s/ Richard J. Arcara

HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: January    18   , 2006